UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HARRY W. STURGES, IV, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3-11-396 |
| | § | |
| SUNTRUST MORTGAGE, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In one of the many cases pending in this Court that challenge threatened or completed home foreclosures, Plaintiff Harry W. Sturges IV sued his mortgage lender, Defendant SunTrust Mortgage, Inc., to contest the June 7, 2011 foreclosure sale of his Galveston Island home.  Sturges asserts claims for wrongful foreclosure, quiet title, and trespass to quiet title, and additionally seeks declaratory relief on these claims.  SunTrust now seeks summary judgment.  Having reviewed the briefing, argument of counsel at a hearing, and applicable law, the Court concludes that undisputed facts show SunTrust is entitled to judgment as a matter of law.  Its motion is therefore **GRANTED**.

**I.   BACKGROUND**

In August 2007, Sturges bought the property at issue in this suit, a lot and house located at 13711 Windlass Circle, Galveston, Texas (the

"Property"). Sturges also owns a home in Houston that serves as his primary residence (the "Westchase Address"). Sturges paid for the Property with two loans from SunTrust. The first loan consisted of a fixed rate note in the amount of $650,000.00 plus interest and a deed of trust granting SunTrust a first lien against the Property. The second loan consisted of an adjustable rate note in the amount of $132,000.00 plus interest and a deed of trust granting SunTrust a second lien against the Property.

The loans did not provide for escrowing, so Sturges had the responsibility of directly paying all tax on the Property to the appropriate authorities. Sturges did not pay taxes on the Property for the years 2007, 2008, 2009, or 2010. Sturges claims he never received a tax bill from the appropriate authorities, disputes that he was ever liable for the taxes and contends that, if he was liable, the tax assessed was grossly inflated.

In March 2009, Galveston County sued Sturges for $22,568.34 in unpaid taxes. *See* Docket Entry Nos. 38-5; 38-15 at 3. In the suit, Galveston County requested a lien on the Property for the amount of Sturges's tax liability. Sturges defended against the tax suit but, in January 2010, SunTrust intervened, paid the outstanding tax, and, in September 2010, won dismissal of the tax suit. It then increased the monthly payments Sturges owed on the first loan so that it could recoup the amount of tax paid. It set

Sturges's January 2011 mortgage payment at $31,169.55, a more than $21,000 increase from his November 2010 payment of $10,040.30. Docket Entry No. 38-5 at 39, 44.

Sturges failed to make the increased payments on the first loan. On February 3, 2011, SunTrust notified Sturges that the first loan was in default. It gave him 30 days to cure the default in order to avoid acceleration. *See* Docket Entry No. 38-17. On May 6, 2011, SunTrust, via certified mail, sent Sturges a notice that the first loan had been accelerated and that the Property would be sold at a foreclosure sale on June 7, 2011. The sale occurred as scheduled. On June 8, 2011, SunTrust mailed Sturges a letter concerning a possible loan modification for the second loan. Sturges signed an application for a modification on that loan and returned the application to SunTrust on June 23, 2011. Although the Property was sold at a foreclosure sale, Sturges did not relinquish possession, and he continues to retain possession. Sturges filed suit on August 4, 2011 in state court, and SunTrust promptly removed the case to this Court.

## II.  STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

### III.   DISCUSSION

#### A.   *Wrongful Foreclosure*

Sturges's primary claim is that the June 7, 2011 foreclosure on the Property was procedurally defective.  The elements of wrongful foreclosure in Texas are "(1) a defect in the foreclosure proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *In re Gongora*, No. H-12-0278, 2012 WL 5373466, at *1 (S.D. Tex. Oct. 30, 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  For the following reasons, Sturges fails create a genuine issue of material fact for any of the three procedural defects he alleges.[1]

---

[1] SunTrust also argues that Sturges would not be entitled to any remedy even if he could prove the elements of wrongful foreclosure.  The Court need not address this issue given the holding that Sturges fails to create a genuine issue of material fact regarding whether there was a procedural defect in the foreclosure process.

### i.  Payment of Taxes and Increase in Mortgage Payments

Sturges first contends that a procedural default occurred when SunTrust paid the taxes due on the Property and added the total to his payments on the first loan.  SunTrust argues that Section 9 of the deed of trust expressly authorizes this procedure.  Docket Entry No. 41-1 Ex. C, at 8 ¶ 9.  In relevant part, Section 9 states:

> **9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding . . . for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, . . . Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . .
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

*Id.*

Sturges does not dispute that Section 9—if applicable—would have allowed SunTrust to pay the tax on the Property and add the amount to his

5

mortgage payments. However, Sturges contends that Section 9 does not apply to tax suits or tax liens, which he argues are controlled by a different part of the deed of trust, Section 4. Docket Entry No. 41-1 Ex. C, at 6 ¶ 4. The relevant language in Section 4 states as follows:

> **4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument . . . .
> Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower . . . (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending . . . . If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

*Id.*

Sturges argues that Section 4, not Section 9, governs his situation because it explicitly mentions taxes, which Section 9 does not, and it appears earlier in the deed of trust. According to Sturges, he performed his obligation under Section 4 to either discharge the tax suit or "contest[] the lien in good faith." *Id.* He argues that SunTrust then breached the deed of trust by not giving him the notice required under Section 4 and by unilaterally paying the tax on the Property. In his view, SunTrust's action

6

was a "prior material breach" that excuses his later default on the increased mortgage payments. Docket Entry No. 39, at ¶ 17.

The basic rules of contractual interpretation that Sturges cites lead the Court to reject his argument. In particular, as Sturges notes, the Court must consider each part of the deed of trust "with every other part so that the effect and meaning of one part on any other part may be determined." *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980) (citation omitted). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *J.M. Davison, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citation omitted). Ultimately, the Court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (citation omitted).

Section 9 provides that if "there is a legal proceeding that might significantly affect Lender's interest in the Property," a category that explicitly includes proceedings for the enforcement of liens, then "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property," including "paying any sums secured by a lien which has priority over this Security Instrument." Docket Entry No. 41-

7

1 Ex. C, at 8 ¶ 9.  Section 9's language is broad and inclusive; it does not differentiate between types of liens.  If the Court were to accept Sturges's interpretation of the deed, Section 9's expansive language would be rendered meaningless in the specific context of tax suits and tax liens, and, potentially, for any other proceedings not expressly mentioned in Section 9.

      A better reading of the deed, one that harmonizes and gives effect to all its provisions, is as follows: Sections 4 and 9 operate in tandem by giving SunTrust two different courses of action if its lien becomes threatened by a superior lien.  Under Section 4, SunTrust "may" notify the borrower of the threatened lien and require him to discharge or contest it, while, under Section 9, it "may" choose to discharge the superior lien itself and add the amount to the borrower's debt.  The use of the permissive "may" in both sections indicates that SunTrust had the power, but not the duty, to take either action.  *See Townsend v. BAC Home Loan Servicing, L.P.*, 461 F. App'x 367, 372 (5th Cir. 2011) (holding, under a very similar set of facts, that "[plaintiff] was not entitled to notice of payment of the property taxes because the deed of trust provides that the Lender 'may' give such notice"); *see also Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 502 (5th Cir. 2012) (citing *Retractable Techs. Inc. v. Abbott Labs. Inc.*, 281 F. App'x 275, 276 (5th Cir. 2008) (per curiam)) (noting the permissive nature of the word

8

"may"). SunTrust chose the latter option, as it had every right to do. Thus, its action did not constitute a procedural defect in the foreclosure process.

### ii. Notice

Sturges's second alleged procedural defect is that SunTrust failed to give him "proper notice of foreclosure" because he maintains he did not receive the notice of acceleration and foreclosure sent to him on May 6, 2011. Docket Entry No. 42, at ¶ 8. Under Texas law, however, "[a]ctual receipt of foreclosure notices is not required for a valid foreclosure sale." *Spady v. Am.'s Servicing Co.*, No. H-11-2526, 2012 WL 1884115, at *4 (S.D. Tex. May 21, 2012) (citing *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied). All that is required for notice to be sufficient is that the foreclosing party "serv[e] written notice of the sale by certified mail on each debtor who . . . is obligated to pay the debt." Tex. Prop. Code Ann. § 51.002(b)(3). Moreover, the Code is clear that "[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." *Id.* § 51.002(e).

Sturges alleges that he never received notice at his last known address, which he maintains was the Westchase Address in Houston. However, SunTrust has presented return receipts from the U.S. Postal Service showing

that the notice was timely sent to, and the delivery timely attempted at, both the Property and the Westchase Address. *See* Docket Entry Nos. 38-9 at 7; 38-10 at 7. Moreover, Sturges admitted in his deposition that he had no evidence that could call SunTrust's evidence on this point into dispute. *See* Docket Entry No. 38-1 at 42:6–44:9. Because SunTrust properly served notice of acceleration and foreclosure upon Sturges under Texas law, no procedural defect occurred for lack of notice.

### iii. Misleading on Potential Loan Modification

Third and finally, Sturges argues that a procedural defect occurred because SunTrust misled him into believing he would receive a loan modification. He claims that he spent the months leading up to foreclosure asking numerous SunTrust agents for a loan modification, and that because he "believed that his loan would be modified, he had no reason to be on the look-out for a foreclosure notice and protect his interests accordingly." Docket Entry No. 39, at ¶ 19.

Several federal courts have assumed that misrepresentations to a borrower that he will be approved for a loan modification can give rise to a procedural defect sufficient to state a claim for wrongful foreclosure under Texas law. *See, e.g.*, *Hurd v. BAC Home Loans Servicing, LP*, No. 3:11-cv-1752-M, 2012 WL 1106932, at *15–16 (N.D. Tex. Mar. 29, 2012) (noting in

passing that the plaintiff, who alleged that she had been promised a loan modification before foreclosure, had "allege[d] that there were procedural defects in the foreclosure sale"); *Hunt v. BAC Home Loans Servicing, LP*, No. C-11-261, 2012 WL 219330, at *5 (S.D. Tex. Jan. 24, 2012) (stating in passing that the plaintiff's allegation that defendants had "promised not to foreclose," a promise which allegedly accompanied promises of a loan modification, "could constitute a procedural defect"); *Zoluaga v. BAC Home Loasn Servicing, L.P.*, No. 4:11-CV-369, 2011 WL 5600377, at *7 (E.D. Tex. Nov. 16, 2011) (stating that plaintiffs had alleged a procedural defect in pleading the existence of facts including "misrepresentations regarding a loan modification").

However, even if such misrepresentations or promises can give rise to a procedural defect, the evidence is clear that no such promise existed. First, as Sturges admitted in his deposition, he only had preliminary conversations with SunTrust about a loan modification. Docket Entry No. 38-1 at 65:25–66:6. He and SunTrust never discussed many of the essential details of a loan modification, including what the new principal balance or interest rate would be. *Id.* at 66:24–67:4. Moreover, Sturges acknowledged his understanding that no modification could have occurred until a new contract was signed. *Id.* at 30:4–31:15; *see also* Docket Entry Nos. 38-6; 38-7.

11

Indeed, in response to a direct question by SunTrust's counsel, he conceded that "I don't believe we reached a final agreement, no, sir." Docket Entry No. 38-1 at 65:20–24. No procedural defect occurred in the foreclosure proceedings. Summary judgment is appropriate on Sturges's wrongful foreclosure claim.

### B.     *Quiet Title and Trespass to Quiet Title*

Sturges also asserts claims for quiet title and trespass to quiet title. Though these are distinct causes of action, *see Woods v. Bank of Am.*, No. 3:11-CV-1116-B, 2012 WL 1344343, at *9 (S.D. Tex. Apr. 17, 2012), both require Sturges to prove his case "on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.). Thus, to prevail under either cause of action, Sturges must meet his burden to prove that his title is superior to SunTrust's. *See Bell v. Bank of Am. Home Loan Servicing, LP*, No. 4:11-cv-2085, 2012 WL 568755, at *6 (S.D. Tex. Feb. 21, 2012) (citing *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The Court has already rejected Sturges's wrongful foreclosure claim, his sole basis for alleging that his title in the Property was superior to SunTrust's. Summary judgment is thus appropriate on both the quiet title

and trespass to quiet title claims.[2]  *Accord Woods*, 2012 WL 1344343, at *9; *see also Bell*, 2012 WL 568755, at *7 (collecting cases dismissing suits for quiet title where the plaintiffs could not prevail on their wrongful foreclosure claims).

### C.  *Declaratory Judgment*

Because a federal declaratory judgment action creates no substantive rights, it requires the existence of a justiciable controversy between the parties. *Bell*, 2012 WL 568755, at *8.  Thus, since summary judgment is appropriate on all of Sturges's substantive claims, his action for a declaratory judgment is "redundant" and must be denied. *Swim v. Bank of Am., N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *8 (N.D. Tex. Jan. 20, 2012).

---

[2] Even if Sturges had a superior title, his suit for trespass to quiet title would fail since he retains possession of the Property.  *See* Tex. R. Civ. P. § 784 ("The defendant in the action shall be the person in possession if the premises are occupied . . . .").

## IV. CONCLUSION

For the reasons discussed above, summary judgment is appropriate on all of Sturges's claims. Defendant's Motion for Summary Judgment (Docket Entry No. 38) is therefore **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** this 14th day of December, 2012.

                                                              _____
                                                              Gregg Costa
                                                              United States District Judge